WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| City of Flagstaff, et al., | No. CV-26-08050-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Desert Mountain Energy Corporation, | |
| Defendant. | |

Pending before the Court is a motion to remand filed by the City of Flagstaff ("the City"). (Doc. 7.)  The motion is fully briefed (Docs. 9, 13) and neither side requested oral argument.  For the reasons that follow, the motion is denied.

## RELEVANT BACKGROUND

### I.    The First Action

On December 11, 2020, the City filed a lawsuit in Coconino County Superior Court against Desert Mountain Energy Corp. ("Desert Mountain").  (Doc. 1-1 at 17 ¶ 91.)  That lawsuit, which was assigned the case number CV2020-00624 (*id.* at 5 ¶ 3), will be referred to as "the First Action."  The First Action was hotly litigated, and the relevant details are set forth in the Arizona Court of Appeals' decisions in *City of Flagstaff v. Desert Mountain Energy Corp.*, 2022 WL 869624 (Ariz. Ct. App. 2022), and *Desert Mountain Energy Corp. v. City of Flagstaff*, 566 P.3d 333 (Ariz. Ct. App. 2025).

In a nutshell, the First Action arose from Desert Mountain's plan to engage in mining operations near Red Gap Ranch, which the City "considers . . . to be the only

location that can meet its future water needs." *City of Flagstaff*, 2022 WL 869624 at *1. On December 2, 2020, the Flagstaff City Council "held a special meeting to discuss litigation against [Desert Mountain]. During that meeting, the City Council went into executive session—without the public present—for '[l]egal advice regarding water litigation.' The City Council voted during that session to authorize litigation against Desert Mountain to stop it from mining helium near the City's water source." *Desert Mountain Energy Corp.*, 566 P.3d at 336. "Based on that vote, the City sued Desert Mountain. The City brought claims for breach of contract, fraudulent misrepresentation, and negligent misrepresentation, and it sought declaratory and injunctive relief." *Id.*

On January 4, 2021, the City filed a first amended complaint in the First Action. (Doc. 1-1 at 130-62.)

On February 8, 2021, the superior court granted the City's request for a preliminary injunction. (Doc. 1-1 at 164-65.) The preliminary injunction required Desert Mountain "to apply for and obtain a state permit before operating a well it has constructed in Northern Arizona." *City of Flagstaff*, 2022 WL 869624 at *1. Desert Mountain appealed the issuance of the preliminary injunction. *Id.*

On March 24, 2022, the Arizona Court of Appeals vacated the preliminary injunction and remanded for further proceedings. *Id.*

On September 30, 2022, following remand, "Desert Mountain answered and counterclaimed. In its counterclaim, Desert Mountain alleged that 'the City violated Arizona's Open Meeting law by not authorizing the filing of the Original Complaint in an open meeting.'" *Desert Mountain Energy Corp.*, 566 P.3d at 336.

On January 17, 2023, the City Council "voted in public to ratify the lawsuit." *Id.*

Notwithstanding that development, Desert Mountain subsequently moved for summary judgment under the theory that the City's claims were "null and void" because "the City violated the open-meeting law and did not timely ratify its vote." *Id.* The superior court, however, denied Desert Mountain's motion for summary judgment and motion for reconsideration. *Id.* In response, Desert Mountain sought special-action relief. *Id.*

On March 5, 2025, the Arizona Court of Appeals accepted jurisdiction and granted relief, concluding that the City violated Arizona's open-meeting law by "authoriz[ing] this litigation during executive session and . . . not timely ratify[ing] that decision." *Id.*

On November 12, 2025, following remand, the City filed a motion for leave to file a second amended complaint in the First Action. (Doc. 1-1 at 167-81.) The City explained that it was seeking to "reassert its claims, in full compliance with the Open-Meeting Law. The substance of the City's claims is unchanged. . . . [T]he operative facts about [Desert Mountain's] breach of contract and the harm that [Desert Mountain's] helium well poses to the City's water supply and the governing law are identical between the First Amended Complaint and the proposed Second Amended Complaint. . . . The purpose of this Motion is merely to allow the City to restate the same claims it brought before while avoiding any doubt as to the viability of those claims under the Open-Meeting Law." (*Id.* at 168.)

On December 1, 2025, Desert Mountain filed an opposition. (*Id.* at 268-75.) Desert Mountain's overarching argument was that because the Court of Appeals had determined that the original complaint was "null and void," there was "no complaint for the City to amend" and "[i]f the City believes it is still legally entitled to maintain its claims . . . , it can refile those claims as a new lawsuit." (*Id.* at 271-72.)

On March 5, 2026, the superior court denied the City's motion for leave to amend. (Doc. 7-1.) The court explained that if it "believed that it had available to it the authority to authorize the complaint's amendment, the City's proposed amendment is no doubt in the interest of justice. The judicial economy of amending the complaint versus the filing of a new action, engaging in additional disclosure and discovery under the new cause number, and getting to 'trial-ready' status weighs heavily in favor of amendment." (*Id.* at 3.) The court also stated that the City's amendment request was not made in bad faith, as "the City's primary motivating factor [was] related to judicial economy and efficiency, not any nefarious (or, at least, not-in-good-faith) motive," and that Desert Mountain would not be unfairly prejudiced by amendment. (*Id.* at 4.) Nevertheless, the court stated that it felt bound by "the clear directives issued by the Court of Appeals" to deny the amendment

request.  (*Id.*)  Finally, the court clarified that the First Action remained pending, notwithstanding the denial of the City's amendment request, because Desert Mountain's counterclaims remained unresolved.  (*Id.* at 6.)

II.    The Second Action

On February 4, 2026—before the superior court had ruled on the City's leave request in the First Action—the City filed a new lawsuit against Desert Mountain in Coconino County Superior Court.  (Doc. 1-1 at 4-27.)  That lawsuit, which was assigned the case number CV2026-00088, will be referred to as "the Second Action."

On March 9, 2026, the City served Desert Mountain with process in the Second Action.  (Doc. 1 ¶ 2.)

III.    Subsequent Developments

On March 10, 2026, the City filed a motion in Coconino County Superior Court to consolidate the First Action and the Second Action.  (Doc. 1-1 at 277-86.)  The motion asserts that "the substantive merits of [the City's] claims are unchanged."  (*Id.* at 284.)[1]

On March 12, 2026, Desert Mountain filed a removal notice in relation to the Second Action.  (Doc. 1.)  The notice asserts that this Court has diversity jurisdiction over the Second Action and that the removal effort is timely because the Second Action was initiated on February 4, 2026, Desert Mountain was served with process on March 9, 2026, and the removal notice was filed within 30 days of service.  (*Id.* ¶¶ 1-2, 5.)

On April 13, 2026, the City filed the pending motion to remand.  (Doc. 7.)

On April 27, 2026, Desert Mountain filed a response.  (Doc. 9.)

On May 4, 2026, the City filed a reply.  (Doc. 13.)

**DISCUSSION**

"Procedures for removal are set forth in 28 U.S.C. § 1446.  Section 1446(a) provides generally that a defendant seeking to remove a civil action shall file a notice of removal in the district court.   Section 1446 also contains restrictions on removal, including a

---

[1]    The parties' motion papers do not indicate whether the Coconino County Superior Court has ruled on the consolidation request and the Court's independent review of the state-court docket indicates that the motion remains pending.

requirement that a notice of removal be filed within thirty days of receipt from the plaintiff of an initial pleading or other document from which it is ascertainable that the case is removable." *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013). Additionally, "[i]n a non-CAFA diversity case, . . . a notice of removal must be filed, in any event, within one year of the commencement of the action." *Id.* at 1126 (citing 28 U.S.C. § 1446(c)(1)). *See also Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 688 (9th Cir. 2005) ("The rule specifies that, in any event, a case may not be removed 'more than 1 year after commencement of the action.'") (emphasis omitted).

The dispute turns on whether Desert Mountain complied with the time limitations set forth in § 1446. The City argues that the relevant "action" was the First Action, which commenced in December 2020, and that Desert Mountain's filing of a removal notice in March 2026 thus came several years too late: "[T]he City's filing of its February 2026 Complaint did not mark the commencement of a new action. On the contrary, this controversy began in December 2020 and has been litigated continuously in state court ever since. Removal is therefore barred by 28 U.S.C. § 1446(c)(1)." (Doc. 7 at 1.) The City acknowledges that "this case presents a unique procedural question: does a complaint that is merely a refiling of previously dismissed litigation—dismissed solely due to a procedural Open-Meeting Law violation that was subsequently cured—commence a 'new action' that resets the diversity removal deadline?" but contends that "[c]ourts confronting substantially similar circumstances have consistently ruled that it does not." (*Id.* at 6.) More specifically, the City seeks to draw an analogy to *In re Roundup Products Liability Litigation*, 396 F. Supp. 3d 893 (N.D. Cal. 2019), *Daligcon v. Bank of America, N.A.*, 2021 WL 1329450 (D. Haw. 2021), and other cases holding that when a plaintiff in a state-court multi-plaintiff lawsuit is ordered to file a new complaint based on a severance ruling, the filing of the new complaint does not extend the one-year removal window that began running upon the commencement of the original action. (*Id.* at 6-8.)

In response, Desert Mountain argues that "the City's failure to abide by the Arizona Open Meeting Law required the conclusion [in the First Action] that the City's 'litigation

ends' and that its claims were 'null and void.'  There can be no clearer direction that the [First Action] has terminated.  The City chose to file a new Complaint, with some similar claims and many different factual allegations.  The new Complaint is just that: new.  There is nothing in the law that prevents [Desert Mountain] from removing the new Complaint to Federal Court pursuant to 28 U.S.C. § 1332." (Doc. 9 at 4.)  Desert Mountain seeks to draw an analogy to *Price v. Food Lion, Inc.*, 768 F. Supp. 181 (E.D. Va. 1991), and *Chott v. Cal Gas Corp.*, 746 F. Supp. 1377 (E.D. Mo. 1990), and argues that although "[t]hese cases are admittedly different procedurally from the current case because they involve voluntary dismissals and then subsequent filings of new cases," they still "support the conclusion that once a prior case has terminated, the filing of a new case starts a new clock for purposes of removal." (*Id.* at 5.)  Desert Mountain concludes: "The current action commenced on February 4, 2026, when the City filed its new lawsuit after losing the prior lawsuit on summary judgment.  The City may not like the consequences of its failure to follow the Arizona Open Meeting Law in its prior lawsuit, which led to the entry of summary judgment on its claims, but that does not mean that it can avoid those consequences by pretending it did not lose on its prior claims." (*Id.* at 6.)

In reply, the City accuses Desert Mountain of failing to meaningfully distinguish *In re Roundup* and *Daligcon* and then seeks to distinguish *Price* and *Chott*.  (Doc. 13 at 1-5.) The City also responds to Desert Mountain's other arguments.  (*Id.* at 5-7.)  The City summarizes its position as follows: "Both parties acknowledge that this situation is procedurally unprecedented.  But unprecedented does not mean undecided.  The foundational principles governing removal law—and the analogous authority the City has identified—point in one direction: a compelled refiling does not restart the removal clock. Faced with any remaining doubt, this Court must resolve it against removability." (*Id.* at 1.)

The parties' dispute raises an issue of first impression—where a new action is filed after a previous action asserting the same claims was judicially determined to be "null and void," do the phrases "initial pleading" and the "commencement of the action" in the

- 6 -

timeliness provisions of 28 U.S.C. § 1446[2] refer to the new complaint/action or the previous one?  The cases cited by the parties are of little assistance in resolving this question because they did not involve lawsuits that were deemed null and void under state law.  Instead, the Court must "turn to the statute's language to determine whether it has a plain meaning.  The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011) (cleaned up).

The first relevant statutory provision here is 28 U.S.C. § 1446(b)(1), which provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Id.*  The next relevant provision is 28 U.S.C. § 1446(b)(3), which provides:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.*  Finally, 28 U.S.C. § 1446(c)(1) provides:

> A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

*Id.*

"It is axiomatic that a case cannot be removed before its inception." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010).  If the Arizona Court of Appeals' determination that the First Action was "null and void" means "the initial

---

[2]   The timeliness provisions are "procedural, non jurisdictional" requirements. *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014).

pleading" was the complaint filed in the Second Action, then the notice of removal was timely under § 1446(b)(1)—it was filed on March 12, 2026, only three days after Desert Mountain was served with process in the Second Action.

In contrast, if (as the City seems to contend) the complaint in the First Action qualifies as the relevant "initial pleading," then the notice of removal was untimely under § 1446(b)(1)—it was filed more than five years after Desert Mountain received, through service or otherwise, a copy of that "initial pleading." Furthermore, although it is unclear how § 1446(b)(3) could even apply in this scenario—the complaint filed in the Second Action would not qualify as "an amended pleading . . . or other paper from which it may first be ascertained that the case is one which is or has become removable" because the case would have been removable from the inception of the First Action—the notice of removal would, in any event, be untimely under § 1446(c)(1) because the First Action would, in this scenario, qualify as the relevant "action" and the notice of removal was filed more than one year after the "commencement" of that "action."

"State law determines when a state court dispute becomes a cognizable legal action eligible for removal." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 955 (9th Cir. 2024). *See also Bush*, 425 F.3d at 688 ("'Commencement' in this context refers to when the action was initiated in state court, according to state procedures."). Thus, the Court must look to Arizona law when determining how the First Action and the Second Action intersect with each other for purposes of the § 1446 timeliness analysis.

Under Arizona law, "[a] civil action is commenced by filing a complaint with the court." Ariz. R. Civ. P. 3. Standing alone, this provision "offers no clarity under the circumstances because it is undisputed that the complaints at issue"—the complaint in the First Action and the complaint in the Second Action—"were filed in state court under different case numbers. At issue is *which* case commenced the action under § 1446(c)(1)." *Daligcon*, 2021 WL 1329450 at *4.

The Arizona Court of Appeals determined that the City's filing of the First Action was "null and void" under Arizona law because the City Council did not comply with

Arizona's open meeting law when voting to approve the lawsuit. *Desert Mountain Energy Corp.*, 566 P.3d at 335-36 ("Because the City . . . authorized this litigation during executive session and did not timely ratify that decision, the City's claims are null and void."). "Actions taken in violation of the open meeting law cease to exist or have any effect." *Johnson v. Tempe Elementary Sch. Dist. No. 3 Governing Bd.*, 20 P.3d 1148, 1151 (Ariz. Ct. App. 2000) (cleaned up). *See also Zogby v. State*, 53 Misc. 2d 740, 743 (N.Y. Ct. Cl. 1967) ("By dictionary definition (Ballentine, Law Dictionary, 2d ed.) 'null and void' means, 'That which binds no one; that which is incapable of giving rise to any rights or obligations under any circumstances; that which is of no effect.'").

Because the First Action was "null and void" from inception as a matter of Arizona law, such that it has ceased to exist and has no effect, it follows that the complaint filed by the City in the First Action cannot qualify as the relevant "initial pleading" for purposes of the 30-day time limitation in § 1446(b)(1). Instead, the relevant "initial pleading" was the City's complaint filed in the Second Action, and as noted above, Desert Mountain complied with § 1446(b)(1)'s 30-day time limitation by filing the removal notice only three days after being served with that pleading. Meanwhile, the City's filing of the First Action cannot qualify as the relevant "commencement of the action" for purposes of the one-year time limitation in § 1446(c)(1), so the removal notice was also timely under that provision.

To be clear, if the decision whether to remand were a matter of discretion, the Court would remand. Disallowing removal under these circumstances would be consistent with what the Ninth Circuit has stated is the purpose of the one-year removal limitation set forth at § 1446(c)(1)—that is, to "preclude removal late in the proceedings at a time when substantial progress has been made in state court." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1317 (9th Cir. 1998) (cleaned up). The superior court expressed a similar sentiment when considering whether to grant the City's request for leave to amend:

> If the Court believed that it had available to it the authority to authorize the complaint's amendment, the City's proposed amendment is no doubt in the interest of justice. The judicial economy of amending the complaint versus the filing of a new action, engaging in additional disclosure and discovery under the new cause number, and getting to "trial-ready" status weighs heavily in favor of amendment.

- 9 -

(Doc. 7-1 at 3.)  Even so, the superior court concluded that it was required to follow "the clear directives issued by the Court of Appeals."  (*Id.* at 4.)  So, too, here.

Finally, the Court acknowledges that "[w]here doubt regarding the right to removal exists, a case should be remanded to state court."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  *See also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("[R]emoval statutes are strictly construed against removal.").  But an issue of first impression is not tantamount to an issue shrouded in doubt. For the reasons discussed above, the Court simply cannot see how the statutory terms "initial pleading" and "commencement of the action" in § 1446 could be construed in the manner the City contends they should be construed in light of the Arizona Court of Appeals' unequivocal determination that the First Action was a nullity from inception under state law.

Accordingly,

**IT IS ORDERED** that the City's motion to remand (Doc. 7) is **denied**.

Dated this 31st day of July, 2026.

_____
Dominic W. Lanza
United States District Judge

- 10 -